IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TOM CURTIS DOWDY,

                    Plaintiff,

         v.                                                    OPINION and ORDER

AMY VAIL, DANIELLE STUBBLEFIELD, and SGT.                      24-cv-130-jdp
   MANN,

                    Defendants.

---

Plaintiff Tom Curtis Dowdy, proceeding without counsel, alleges that defendants, Wisconsin probation agents and a sergeant at the Walworth County Jail, unlawfully disciplined him based on an erroneous determination that he violated a condition of his probation. Dowdy brings a First Amendment claim for damages.

The probation agent defendants, Amy Vail and Danielle Stubblefield, and defendant Sergeant Mann, move for summary judgment. Dkt. 46 and Dkt. 51. The undisputed facts show that Vail imposed a special condition of probation prohibiting Dowdy from contacting his fiancée, Kimberly Faltinson, because: (1) he was rearrested on drug charges in connection with a domestic disturbance involving Faltinson; and (2) he and Faltinson had a history of domestic incidents and abusing drugs together. That special condition, intended to promote rehabilitation and public safety, was still in place when Dowdy contacted Faltinson from prison, justifying the disciplinary charges. I will grant defendants' motions and close the case.

## UNDISPUTED FACTS

I begin with a word about Dowdy's summary judgment opposition. On summary judgment, this court requires the moving party, here defendants, to set out a statement of

proposed facts with citations to admissible supporting evidence. *See* the attachment to Dkt. 21 at 2–4. The party opposing the motion, here Dowdy, must state in separate numbered paragraphs whether each fact is disputed, and if it is, support the opposition with a clear citation to admissible evidence. *Id.* at 3–5. The court will not search the record for evidence that supports a party's contentions. *Id.* at 2, 5. If the opposing party does not respond to a proposed fact, or if a response to a proposed fact otherwise does not comply with the court's procedures, the court takes the original factual statement as true and undisputed. *Id.* at 8. All litigants must comply with the court's orders and rules. *See Allen-Noll v. Madison Area Tech. Coll.*, 969 F.3d 343, 349 (7th Cir. 2020).

Dowdy's opposition to defendants' proposed facts doesn't comply with the court's summary judgment procedures. Dowdy combines in one document his brief in opposition, responses to defendants' proposed facts, and his own proposed facts. Dkt. 64. In this disorganized submission, Dowdy does not respond to many of defendants' proposed facts. Dowdy purports to dispute some of defendants' proposed facts, but he fails to set out his disputes in separate numbered paragraphs that correspond to defendants' proposed facts, so it is often unclear which proposed fact he is disputing. Dowdy also fails to provide citations to admissible evidence for several of his disputes, and many of the citations that he provides are unspecific. Dowdy's own proposed facts are deficient because he fails to support them with citations to admissible evidence. Defendants' proposed facts are properly supported with evidence, so I will accept them as undisputed. *See Allen-Noll*, 969 F.3d at 349; *Hedrich v. Bd. of Regents of Univ. of Wisconsin Sys.*, 274 F.3d 1174, 1177–78 (7th Cir. 2001).

With that background, the following facts are undisputed. On some points, I have supplemented defendants' proposed facts with matters of public record,

In July 2013, in Walworth County case no. 12CF536, Dowdy pleaded guilty to possession with intent to distribute heroin. *See* docket sheet in the '536 case.[1] Dowdy received a bifurcated ten years sentence with the Wisconsin Department of Corrections, consisting of five years' initial confinement and five years' extended supervision.

Dowdy was released to extended supervision in February 2018. *Wisconsin v. Dowdy*, No. 2024AP813-CR, 2026 WL 522933, at *1 (Wis. Ct. App. Feb. 25, 2026). Dowdy's supervision was revoked and he returned to prison in June 2019; he was released from reconfinement and placed back on extended supervision in November 2020. *Id.*

In March 2021, in Walworth County case no. 21CF122, Dowdy was charged with several offenses, including possessing tetrahydrocannabinol (THC) and bail jumping. *See* docket sheet in the '122 case. Dowdy pleaded guilty to two felony counts of bail-jumping one one felony count of possessing THC. *Dowdy*, 2026 WL 522933, at *1. A year later, a sentence of six years with the DOC, consisting of three years' initial confinement and three years' extended supervision, was imposed and stayed, in favor of four years' probation. In December 2022, Dowdy was released from the Walworth County Jail (WCJ) on probation in the '122 case and extended supervision in the '536 case.

In Wisconsin, offenders on probation are subject to rules of supervision, which include standard rules and may include special rules. The rules of supervision are in effect from the date on which the offender receives a copy of the rules until one of the following occurs: (1) the rules are updated and the updated rules are provided to the offender; (2) the offender's probation is revoked; or (3) the offender successfully completes probation.

---

[1] The docket sheets for Dowdy's criminal cases are available at https://wcca.wicourts.gov/.

Defendant Vail works for the DOC Division of Community Corrections, and she was Dowdy's probation agent when he was released from WCJ in December 2022. Vail had discretion to add special rules to Dowdy's rules of supervision if they bore a reasonable relationship to his rehabilitation and protecting the public.

In March 2023, there was a disturbance between Dowdy and Kimberly Faltinson, and Faltinson called law enforcement. The responding officers found Dowdy under the influence of a controlled substance and in possession of methamphetamine. He was arrested, booked into the WCJ, and charged with possession of methamphetamine in Walworth County case no. 2023CF149. *See* docket sheet in the '149 case.

Later that month, Vail updated Dowdy's rules of supervision. The updated rules included special rule 1, which provided: "You shall not have contact with Kimberly Faltinson . . . including but not limited to in person, phone, mail, residence, employment or the internet including social media sites." Vail imposed special rule 1 because Dowdy and Faltinson had a history of domestic incidents and of behavior that violated his rules of supervision, including using controlled substances.

At that time, probation agent and WCJ liaison, defendant Stubblefield, presented Dowdy with his updated rules of supervision by reading them aloud to him and handing him a copy. Dowdy refused to sign the updated rules, but Stubblefield informed him that they still bound him.

In May 2023, Dowdy was transferred to Rock County Jail (RCJ) to participate in a rehabilitation program. In July 2023, Dowdy tested positive for THC after returning to RCJ from community service. Dowdy admitted to smuggling THC into RCJ.

4

Later that month, Stubblefield served Dowdy with a notice of violation, initiating the process to revoke his probation and extended supervision. The bases of revocation were: (1) absconding from supervision; (2) use and possession of controlled substances in March 2023; (3) failing to complete his rehabilitation program; and (4) consuming controlled substances in July 2023. For reasons immaterial here, the notice of violation was later amended. Despite this notice, Dowdy remained subject to his updated rules of supervision. An offender's rules of supervision apply to him until the revocation process is complete.

Dowdy's revocation hearing was held on September 19, 2023. Dowdy was represented by attorney Jeramiah J. Maynard. Dkt. 49-10 at 2. On September 25, 2023, the administrative law judge (ALJ) issued a decision revoking Dowdy's probation and extended supervision. The decision stated that it would "take effect and be final 10 working days after the date it was issued unless an administrative appeal [was] filed." Dkt. 49-10 at 1. The decision also stated that any administrative appeal "must be filed on or before October 9, 2023." *Id.* On the deadline, through Maynard, Dowdy appealed the ALJ's decision to the Wisconsin Division of Hearings and Appeals (DHA). Dkt. 49-11.

Later that month, Dowdy received three major disciplinary violations at WCJ for unauthorized communication with Faltinson. The first violation alleged that, on October 21, 2023, Dowdy used prisoner Jose Montiel's phone account to call Faltinson. Dkt. 49-13 at 1. The second violation alleged that, on October 22, 2023, Dowdy received messages from Faltinson. *Id.* at 2. The third violation alleged that, on October 24, 2023, Dowdy stood nearby during a visit between Faltinson and Montiel in which Montiel passed messages between Faltinson and Dowdy. *Id.* at 3. That day, Mann contacted Stubblefield and asked her to confirm that the no-contact condition was still in place, and she confirmed that to be the case.

5

During two calls with Faltinson, Dowdy was controlling and manipulative. Dowdy questioned Faltinson until she would walk around the house on video and show him that she was alone, and that she was not preparing to leave to see people whom he did not want her around.

Defendant Mann was the hearing officer for the disciplinary violations. Mann found Dowdy guilty of each violation, and he imposed three days' disciplinary segregation for the first two violations and five days' disciplinary segregation for the third violation.

On November 7, 2023, a DHA administrator sustained the ALJ's order in material part. Dkt. 49-15. At that point, the revocation of Dowdy's probation in the '122 case and extended supervision in the '536 case was final, and he was no longer subject to the updated rules of supervision.

ANALYSIS

Dowdy argues that the condition not to contact Faltinson ceased to apply to him when the ALJ issued the decision revoking his probation and extended supervision on September 25, 2023. So, the argument goes, Mann violated the First Amendment when he disciplined him for communicating him with Faltinson in October 2023. Dkt. 28 at 4 (court's summary of the second amended complaint's allegations); Dkt. 64 at 1–3 (brief in support). Dowdy adds that Vail and Stubblefield were involved in that violation because Vail imposed the condition and Stubblefield confirmed that it still applied. Dowdy does not appear to argue that the no-contact condition is substantively unreasonable, but I'll address that issue.

As a general rule, a prisoner has a First Amendment right to communicate with people outside the prison. *See Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). Prisoners also retain a

6

limited constitutional right to intimate association. *Easterling v. Thurmer*, 880 F.3d 319, 322 (7th Cir. 2018). In both cases, this right may be limited if the limitation is reasonably related to a legitimate governmental interest. *See id.*; *Boriboune v. Litscher*, 91 F. App'x 498, 499 (7th Cir. 2003); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987). Along similar lines, a parolee or probationer's First Amendment right of association "may be restricted to further the goals of parole or probation, as long as the restriction is reasonably related to achieving those goals." *Behlke v. Jordan*, 83 F.3d 424, 1996 WL 208514, at *1 (7th Cir. 1996).

To determine whether the restriction on Dowdy's communication with Faltinson violated the First Amendment, I generally must consider whether the restriction had a valid, rational connection to a legitimate governmental interest; whether alternative means were open to exercise the asserted right; what impact accommodating the right would have on prison administration; and whether there were ready alternatives to the restriction. *See Turner*, 482 U.S. at 89–90.

The first *Turner* factor—whether there is a rational connection between the restriction and a legitimate governmental interest—is the most important factor and can be dispositive. *See Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009) ("Where . . . there is only minimal evidence suggesting that the prison's regulation is irrational, running through each factor at length is unnecessary."); *Sebolt v. Samuels*, 749 F. App'x 458, 460 (7th Cir. 2018) ("The first of [the *Turner*] factors . . . is the principal factor."). In evaluating whether there is a rational connection between the restriction and the legitimate governmental interest, the initial burden of proof rests with the defendants. *Singer v. Raemisch*, 593 F.3d 529, 536–37 (7th Cir. 2010). Once the defendants offer a plausible explanation for the restriction, the burden shifts to the plaintiff to present evidence undermining the defendants' explanation. *Id.*

In Wisconsin, a condition of probation is reasonably related to the offender's rehabilitation if it helps him conform his conduct to the law. *State v. Rowan*, 2012 WI 60, ¶ 10. It is also appropriate to consider public safety when determining what probation conditions are appropriate for a particular person. *See id.*

Vail included special rule 1 in the updated supervision rules after Dowdy, who had previously been convicted of drug offenses, had a disturbance with Faltinson that caused her to call law enforcement, and that led to a new drug charge. That was no isolated incident: Dowdy and Faltinson had a history of domestic incidents and of behavior that violated his rules of supervision, including using controlled substances. Special rule 1 prohibited Dowdy from communicating with a person with whom he had a volatile relationship and in whose company he had repeatedly shown an inability to conform his conduct to the law. The undisputed facts show that special rule 1 was reasonably related to the legitimate governmental interests of rehabilitation and protecting the public, including Faltinson.

Dowdy was booked into WCJ around the time that Vail updated his supervision rules, and he was later transferred to RCJ, but his involvement with drugs and conflict with Faltinson didn't end upon his reincarceration. Dowdy tested positive for THC after returning from community service, and he admitted to smuggling THC into RCJ. Later, at WCJ, Dowdy was controlling and manipulative when he spoke with Faltinson. Considering their volatile relationship and history of substance abuse, it was reasonable to think that communicating with Faltinson from prison would thwart Dowdy's rehabilitation and fuel the volatility.

Consistent with this conclusion, there are cases strongly suggesting that probation agents may limit an offender's communications with certain individuals, even spouses or intimate partners, if the limitation reasonably serves the goals of rehabilitation and safety.

*See Coleman v. Thomas*, No. 18-cv-673-jdp, 2020 WL 1912002, at *3 (W.D. Wis. Apr. 20, 2020) ("I am aware of no Supreme Court or Seventh Circuit decisions specifically addressing the constitutionality of supervision conditions that eliminate contact among family members, but district courts in this circuit have upheld them."); *Weiss v. Spielvogel-Donalds*, No. 16-cv-219-jps, 2017 WL 3726986, at *11 (E.D. Wis. Aug. 28, 2017) ("[P]arole agents are generally afforded broad discretion in their role of ensuring parolees abide by the conditions of parole and progress toward prosocial behavior."); *Christophel v. Brandl*, No. 08-cv-755, 2010 WL 1050412, at *10 (E.D. Wis. Mar. 17, 2010) ("Limiting the type and amount of contact between Christophel and his wife was directly related to protecting Christophel and his wife from each other, and protecting the public from their violent interactions."). Dowdy cites a few cases in his brief in opposition, but they are inapposite.

Dowdy's position is that special rule 1 did not apply to him in late October 2023, once Mann found him guilty of three disciplinary violations for contacting Faltinson. Dowdy contends that special rule 1 ceased to apply to him on September 25, 2023, when the ALJ issued his decision revoking his probation. The undisputed facts show otherwise. Dowdy appealed the ALJ's decision by the deadline of October 9, 2023, so his revocation did not become final until that decision was sustained by the DHA administrator on November 7, 2023.

To sum up, defendants have shown that the no-contact condition, intended to promote rehabilitation and public safety, was still in place when Dowdy contacted Faltinson from prison, justifying the disciplinary charges. I will grant defendants' motions and close the case.

ORDER

IT IS ORDERED that:

1.  The state defendants' motion for summary judgment, Dkt. 46, is GRANTED.

2.  Sergeant Mann's motion for summary judgment, Dkt. 51, is GRANTED.

3.  The clerk of court is directed to enter judgment and close the case.

Entered April 1, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge